UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| DAVID WAITTS, | ) | CASE NO. 4:06 CV 1095 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| T.R. SNIEZEK, et al., | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

On March 2, 2006, plaintiff pro se David Waitts filed this Bivens[1] action against Elkton Federal Correctional Institution ("FCI-Elkton") Warden T.R. Sniezek, FCI-Elkton Assistant Warden Andy Datchason, FCI-Elkton "S.I.S." Lieutenant Tim Montgomery, FCI-Elkton Special Housing Unit ("SHU") Captain Janel Fitzgerald, and FCI-Elkton F-Unit Counselor Debra Smith. In the complaint, plaintiff alleges that he has been placed unfairly in the FCI-Elkton SHU and has been denied visitation privileges. He seeks release from the SHU, restoration of his visitation privileges, a written apology from the defendants, and monetary damages for "the unjust time spent in [the] SHU." (Compl. at 10.) Because all of the events of which plaintiff complains occurred in Lisbon, Ohio, where FCI-Elkton is located, United States District Judge Robert E. Maxwell

---

[1] Bivens v. Six Unknown Agents, 403 U.S. 383 (1971).

determined that venue did not lie in the Northern District of Virginia, and transferred the case to the Northern District of Ohio on May 3, 2006.

## *Background*

Mr. Waitts alleges that his brother was shot and killed on July 9, 2005 by a family member of an inmate with whom Mr. Waitts was incarcerated at FCI-Elkton. Upon learning of the tragedy, Lieutenant Brew called Mr. Waitts and the other inmate, Harry Pugh, into his office to ensure that the violence would not erupt in the institution. Mr. Pugh and Mr. Waitts assured Lieutenant Brew that there was no animosity between them and that neither of them intended to initiate an altercation or seek retaliation. Lieutenant Brew allegedly took the inmates at their word and returned them to the general population of the prison.

Approximately one week later, Mr. Pugh's family called FCI-Elkton to inquire about their son's safety. They had heard a rumor in their hometown of Wheeling, West Virginia, that Mr. Pugh had been attacked by Mr. Waitts. Mr. Pugh was called to the Lieutenant's office to speak with his family and assured them that the rumor was false. After he terminated the telephone call, Lieutenant Brew placed Mr. Pugh into the SHU pending an investigation of the matter. Mr. Waitts then was called to the office and questioned about the rumor. He also denied that anything had taken place within the institution, but was nevertheless taken to the SHU as well.

Captain Fitzgerald visited the inmates 30 days later. They once again attempted to explain that there had been no altercation and were told they would be released the next morning. When the next morning came, however, they were told the Captain had changed her mind. Mr. Waitts attempted to speak with Warden Sniezek but was told by the warden that he was unfamiliar with the situation and that he should address his concerns to Captain Fitzgerald. He indicates he

attempted to obtain a BP-8.5 grievance form from Ms. Smith but she evaded him.

On November 23, 2005, Mr. Waitts telephoned his mother to discuss his continued incarceration in the SHU. He then learned that his mother had attempted to visit him but was not permitted to see him. He states he discovered that Lieutenant Montgomery had terminated his visits. Mr. Waitts claims he spoke to his unit team, Captain Fitzgerald, Warden Sniezek, and Assistant Warden Datchson "about my visits being taken and why I was still in [the] SHU after Pugh was no longer here at FCI-Elkton and no one had an answer for me." (Compl. at 9.) Mr. Waitts was transferred to the Northern Regional Jail in Moundsville, West Virginia after filing this action.

*Analysis*

A prisoner must allege and show that he has exhausted all available administrative remedies before filing a civil rights action in federal court to challenge the conditions of his confinement. 42 U.S.C. §1997e; Wyatt v. Leonard, 193 F.3d 876, 878 (6th Cir. 1999); Brown v. Toombs, 139 F.3d 1102, 1104 (6th Cir. 1988), cert. denied, 525 U.S. 833 (1998). To establish that he exhausted his remedies prior to filing suit, the prisoner must plead his claims with specificity and show that he has exhausted his administrative remedies with respect to each allegation against each defendant by attaching to the complaint a copy of the applicable administrative dispositions or, in the absence of written documentation, describing with specificity the administrative proceedings and their outcomes. Knuckles-El v. Toombs, 215 F.3d 640, 642 (6th Cir. 2000). The prisoner must exhaust each specific claim against each defendant named in the complaint to satisfy the exhaustion requirement. See Curry v. Scott, 249 F.3d 493, 504-05 (6th Cir. 2001). Moreover, the prisoner must specifically grieve allegations of retaliation or conspiracy against the defendants he names in

his complaint.  Garrison v. Walters, No. 00-1662, 2001 WL 1006271 (6th Cir. Aug. 24, 2001); Curry, 249 F.3d at 504-05.  In the absence of such particularized averments concerning exhaustion, the action must be dismissed.  Id.

Title 28 of the Code of Federal Regulations sets forth a four-step grievance procedure for administrative remedies for inmates housed in federal prisons. Under this title, an inmate initiates the grievance procedure by requesting an Informal Resolution from the prison official whose area of responsibility is most related to the grievance. 28 C.F.R. § 542.13.  If the inmate is dissatisfied with the informal response, or if there has been no response to the complaint, the inmate may file a BP-9 form with the institution staff member designated to receive such requests. 28 C.F.R. § 542.14.  If this second step does not provide satisfactory results, the inmate may file an appeal on a BP-10 form to the Regional Director. 28 C.F.R. § 542.15.  An inmate who is not satisfied with the Regional Director's response may submit an appeal on the appropriate BP-11 form to the General Counsel.  28 C.F.R. § 542.15.  The General Counsel's written response to the inmate's appeal is the final decision on the grievance.

Mr. Waitts has not demonstrated that he has exhausted his administrative remedies for each claim against each defendant.  Although he claims he attempted unsuccessfully to obtain a grievance form from Ms. Smith to contest his continued placement in the SHU, there is no suggestion that he made an attempt to file grievances related to his terminated visitations, or which pertain to his claims against Warden Sniezek, Assistant Warden Datchason, Lieutenant Montgomery, or even Unit Counselor Debra Smith.  The inmate bears the burden of establishing exhaustion of administrative remedies.  Brown, 139 F.3d at 1104.  Plaintiff has not satisfied that burden.

Generally, if the exhaustion requirement has not been met, the federal case will be dismissed without prejudice. Brown v. Toombs, 139 F.3d at 1104. If, however, a complaint on its face clearly fails to state a claim upon which relief may be granted, the court may dismiss it on the merits without requiring exhaustion. See 42 U.S.C. § 1997e(c)(2); Id. While pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court is required to dismiss an in forma pauperis action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[2] Neitzke v. Williams, 490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996). Although plaintiff has not demonstrated that he has complied with the mandates of section 1997(e), his complaint fails to state a claim upon which relief may be granted, and is subject to dismissal without exhaustion pursuant to 28 U.S.C. § 1915(e).

As a threshold matter, Mr. Waitts seeks an award of damages to compensate him for the amount of time he spent in the segregation unit. A prisoner generally does not have a liberty interest in remaining free from placement in segregation unless the restrictions imposed constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). A prisoner's assignment to administrative segregation, alone, does not constitute an atypical and significant hardship on the inmate, Mackey

---

[2] An in forma pauperis claim may be dismissed sua sponte, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. McGore v. Wrigglesworth, 114 F.3d 601, 608-09 (6th Cir. 1997); Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985), cert. denied, 474 U.S. 1054 (1986); Harris v. Johnson, 784 F.2d 222, 224 (6th Cir. 1986); Brooks v. Seiter, 779 F.2d 1177, 1179 (6th Cir. 1985).

v. Dyke, 111 F.3d 460, 463 (6th Cir.1997); Rimmer-Bey v. Brown, 62 F.3d 789, 790-91 (6th Cir.1995), and there are no facts presented in the complaint that would reasonably suggest that Mr. Waitts experienced treatment which would give rise to the protection afforded by the Due Process Clause. See Sandin 515 U.S. at 485.

Mr. Waitts also seeks injunctive relief in the form of his release from the Elkton SHU and return of his visitation privileges. A prisoner's claim for injunctive relief becomes moot when the prisoner is no longer confined at the prison where the claim allegedly arose. See Kensu v. Haigh, 87 F.3d 172, 175 (6th Cir. 1996). Mr. Waitts filed a change of address form on March 20, 2006 indicating that his is now confined in the Northern Regional Jail in Moundsville, West Virginia. His request for release from the Elkton SHU and return of his visitation privileges at that institution are therefore moot.

## *Conclusion*

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e). The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[3]

IT IS SO ORDERED.


Dated: August 16, 2006        *s/    James S. Gwin*
                              JAMES S. GWIN
                              UNITED STATES DISTRICT JDUGE

---

[3]    28 U.S.C. § 1915(a)(3) provides:

   An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.

6